UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

KIMBERLY JOHNSON,

    Plaintiff,

vs.

CREDIT ACCEPTANCE CORPORATION,

    Defendant.

Case No. 1:21-cv-00681-PLM-SJB

---

**DEFENDANT CREDIT ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION AND TO DISMISS THE CASE OR, IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS**

Defendant Credit Acceptance Corporation ("Credit Acceptance"), through counsel, moves to compel arbitration and to dismiss, or in the alternative, to stay all proceedings in this action until arbitration is completed. This relief is proper because Plaintiff Kimberly Johnson ("Plaintiff") signed a contract that contains a conspicuous, valid, and mandatory "Arbitration Clause."

In support of its motion, Credit Acceptance relies on the facts and law presented in the attached Memorandum in Support. Credit Acceptance sought concurrence but it was not obtained, and therefore, it is necessary to bring this motion.

    Respectfully submitted,

    KING AND ASSOC., PLLC

    By: */s/ Stephen W. King*
    Stephen W. King (P56456)
    Attorneys for Credit Acceptance Corp.
    355 S. Old Woodward, Suite 100
    Birmingham, MI 48009
    (248) 792-2398
Dated: September 14, 2021    sking@kingandmurray.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

KIMBERLY JOHNSON,

        Plaintiff,

vs.

        Case No. 1:21-cv-00681-PLM-SJB

CREDIT ACCEPTANCE CORPORATION,

        Defendant.

## MEMORANDUM IN SUPPORT

## ISSUES PRESENTED

1. Whether Plaintiff entered into a valid Arbitration Clause with Credit Acceptance?

2. Whether the scope of the Arbitration Clause encompasses Plaintiff's claims in this action?

3. Whether this action should be dismissed with prejudice, or in the alternative, stayed pending binding arbitration?

Credit Acceptance submits that this Court should answer each of these questions in the affirmative, compel arbitration, and dismiss Plaintiff's Complaint, or in the alternative, stay all proceedings in this action until arbitration is completed.

# TABLE OF AUTHORITIES

**Cases**

*Allied-Bruce Terminix Cos v. Dobson*, 513 U.S. 265 (1995)

*Anderson v. Credit Acceptance Corp.,* 2015 U.S. Dist. LEXIS 70149 (W.D. Mich. June 2015)

*Arrasola v. MGP Motor Holdings, LLC*, 172 So. 3d 508 (Fla. Dist. Ct. App. 2015)

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011)

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986)

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)

*Copeland v. Katz, et al.,* 2005 U.S. Dist. LEXIS 31042 (E.D. Mich. Nov. 2005)

*Credit Acceptance Corp v. Davisson,* 644 F. Supp. 2d 948 (N.D. Ohio 2009)

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)

*Firdous v. Credit Acceptance Corp.,* 2017 U.S. Dist. LEXIS 218911 (W.D. Mich. Mar. 2017)

*Garcia v. Weltman, Weinberg & Reis Co, et al.,* 2014 U.S. Dist. LEXIS 59825 (E.D. Mich. Apr. 2014)

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)

*Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000)

*Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568 (6th Cir. 2003)

*Howard v. Rent-A-Center, Inc.*, 2010 U.S. Dist. LEXIS 76342 (E.D. Tenn. July 2010)

*Lee v. Credit Acceptance Corp.,* 2015 U.S. Dist. LEXIS 153035 (W.D. Wis. Nov. 2015)

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)

*Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)

*Rajapakse v. Credit Acceptance Corp.,* 2017 U.S. Dist. LEXIS 135092 (E.D. Mich. July 2017)

*Rodriguez de Quijas v. Shearson/Am Express, Inc.*, 490 U.S. 477 (1989)

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974)

*Smith v. Credit Acceptance Corp.,* 2017 U.S. Dist. LEXIS 3910 (M.D. Pa. Jan. 2017)

*Stolt-Nielsen SA v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662 (2010)

*United States v. Evans*, 272 F.3d 1069 (8th Cir. 2001)

*Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468 (1989)

*West v. Legacy Motors, Inc.,* 2016 U.S. Dist. LEXIS 151581 (E.D. Mich. Nov. 2016)

**Other Authorities**

Federal Arbitration Act, 9 U.S.C. §§ 1-16

## CERTIFICATE OF COMPLIANCE

There are 4,736 words in this Motion, Memorandum in Support, and Certificate of Service which was prepared using Microsoft Word (2016). The word count was tallied by the aformentioned word processing software used to create the brief.

4.

1.  **INTRODUCTION**

Plaintiff entered into a Retail Installment Contract ("Contract") with Todd Wenzel Buick GMC, Inc. (the "Dealership") for the purchase of a used car in April 2017. The Contract was assigned by the Dealership to Credit Acceptance for servicing and collections. Importantly, the Contract contains a conspicuous, valid and mandatory arbitration clause (the "Arbitration Clause"). After entering into the Contract, Plaintiff defaulted by failing to make all of the required monthly payments on the vehicle. Nevertheless, Plaintiff has filed the instant lawsuit against Credit Acceptance. Pursuant to the unambiguous language of the Contract, Credit Acceptance now moves the Court to compel arbitration and to dismiss this lawsuit with prejudice, or in the alternative, to stay all proceedings in this action until arbitration is completed.[1]

2.  **BACKGROUND**

On April 4, 2017, Plaintiff entered into the Contract with the Dealership for the purchase of a 2007 Buick LaCrosse. *See* Exhibit 1 – Declaration of Kyrie Cortte ("Cortte Dec.," Exhibit A.). Ultimately, Plaintiff defaulted on the Contract. (Cortte Dec., ¶ 6).

The Contract was immediately assigned to Credit Acceptance, and Credit Acceptance is explicitly designated as "Assignee" therein. (Cortte Dec., Exhibit A.). In this regard, the Contract provides that:

> **NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth above. This assignment is without recourse.  You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD – SUITE 3000, SOUTHFIELD,**

---

[1] Credit Acceptance denies that Plaintiff's claims have any merit whatsoever, and reserves and does not waive, any and all defenses to Plaintiff's claims. Credit Acceptance also reserves the right to file a counterclaim for, among other things, breach of contract.

>  **MICHIGAN 48034-8339, 1-(800)-634-1506**. (Original emphasis.)
> *Id*.

Plaintiff's signature is directly below this notice. Importantly, the Contract contains two conspicuous notices advising Plaintiff to read the entire Contract, both of which emphasize the existence of the Arbitration Clause. *Id.* The first notice, which is in larger type, provides:

> **ARBITRATION:** This Contract contains an Arbitration Clause that states You and We may elect to resolve any dispute by arbitration and not by court action. See the Arbitration Clause on Page 5 of this Contract for the full terms and conditions of the Arbitration Clause. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Arbitration Clause. (Original emphasis.) *Id*.

The second notice, also in larger type, alerts Plaintiff to the Arbitration Clause, and it provides:

> **ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, **INCLUDING THE ARBITRATION CLAUSE**, SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE. (Original emphasis.) *Id*.

These two notices clearly apprised Plaintiff of the Arbitration Clause, and Plaintiff acknowledged the same by signing just below these two notices. *Id*.

The Arbitration Clause sets forth, among other things, the terms for the resolution of "Disputes" between Plaintiff and Credit Acceptance, and provides, in pertinent part, as follows:

> A "Dispute" is any controversy or claim between You and us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based in tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.

\*\*\*\*\*

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration.

\*\*\*\*\*

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law. *Id.*

In sum, the Arbitration Clause provides that: Plaintiff or Credit Acceptance may elect to arbitrate "Disputes" (which again, "have the broadest meaning possible") either before or after litigation has begun; if and when arbitration is elected by either Plaintiff or Credit Acceptance, then there is no right to pursue Disputes in this (or any) Court; the Contract evidences a transaction in interstate commerce; and arbitration is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). (Cortte Dec., Exhibit A.).

The Arbitration Clause also contains three key provisions, which are designed to protect consumers such as Plaintiff. ***First***, the arbitration will take place near the place where the Contract was entered into or where Plaintiff resides and not in Southfield, Michigan where Credit Acceptance's headquarters are located – "However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You." *Id.* ***Second***, Plaintiff may choose to initiate arbitration with either JAMS or the American Arbitration Association. Both are national companies that handle thousands of arbitrations on an annual basis. *Id*. ***Third***, and perhaps most importantly, Plaintiff had the absolute right to reject the Arbitration Clause, with no consequence to the remaining terms of the Contract. *Id*. Specifically, the Arbitration Clause provides:

> **Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that**

7.

> **describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract**. (Original emphasis.) *Id*.

Plaintiff did not exercise this right to reject the Arbitration Clause, as Credit Acceptance did not receive any such notice from Plaintiff. (Cortte Dec., ¶ 7). As such, Credit Acceptance seeks to enforce its express contractual right to compel arbitration.

### 3. ARGUMENT

Plaintiff entered into the Contract, which includes an Arbitration Clause requiring, among other things, that "Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes . . . brought later in the lawsuit. . . . A Dispute shall be fully resolved by binding arbitration." (Cortte Dec., Ex. A.). Plaintiff initiated this lawsuit requesting that the Court adjudicate her claims against Credit Acceptance, which are within the scope of the binding Contract and the Arbitration Clause therein. As a result, Credit Acceptance moves this Court to compel the parties to arbitration and to dismiss this action with prejudice, or in the alternative, to stay all proceedings in this action, pending completion of the arbitration.

### 3.1. There is a strong federal policy favoring the enforcement of arbitration agreements.

Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements. *Allied-Bruce Terminix Cos v. Dobson*, 513 U.S. 265, 270 (1995). With its enactment, Congress placed arbitration agreements "upon the same footing as other contracts." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). As such, "generalized attacks on arbitration," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991), based on the

8.

"suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," *Rodriguez de Quijas v. Shearson/Am Express, Inc.*, 490 U.S. 477, 481 (1989), have been repudiated as "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas*, 490 U.S. at 481. In short, arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress, with its enactment of the FAA, and the federal courts, through their interpretation of the FAA, have together created a strong federal policy favoring the enforcement of arbitration agreements. This strong federal policy requires federal courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts should be resolved in favor of arbitration. *See e.g.*, *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-577 (6th Cir. 2003). Further, the FAA "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion* ("*Concepcion*"), 131 S. Ct. 1740, 1745 (2011). "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' *Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989); *see also Stolt-Nielsen SA v. AnimalFeeds Int'l. Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605, 622 (2010)." *Concepcion*, 131 S. Ct. at 1748. This language is in step with the Arbitration Clause in the present case, which provides, that "A 'Dispute' is any controversy or claim between You and Us arising out of or in any way related to this Contract. . . ." (Cortte Dec., Ex. A).

9.

In analyzing a similar situation (*i.e.*, a retail installment contract was assigned to Credit Acceptance by an automobile dealership and the consumer subsequently initiated a lawsuit against Credit Acceptance in federal court) when an arbitration agreement was contained in the retail installment contract, this Court noted in *West v. Legacy Motors, Inc.*, 2016 U.S. Dist. LEXIS 151581 (E.D. Mich. Nov. 2016), in part, as follows:

> First, the court concludes that the parties agreed to arbitrate. . . While Plaintiff argues that the Arbitration Clause is unconscionable, other courts have upheld similar clauses [citations omitted]. . . . Second, the scope of the agreement is broad. . . . Third, nothing suggests that Congress intended to exempt Plaintiff's claims from arbitration. . . . Finally, because all of Plaintiff's claims are subject to arbitration, there is no reason to stay this proceeding rather than dismiss without prejudice"). *West*, 2016 U.S. Dist. LEXIS 151581 at *5-7.[2]

Other examples include the following cases decided in this state: *Firdous v. Credit Acceptance Corp.*, 2017 U.S. Dist. LEXIS 218911, at *5-6 (W.D. Mich. Mar. 30, 2017) ("The Court finds that the arbitration clause at issue here is enforceable. First, the parties agreed to arbitrate. The parties signed the RIC containing the arbitration clause. It is undisputed that Plaintiff did not exercise her right to reject the arbitration clause. Second, the scope of the arbitration clause is broad. The clause provides for the arbitration of 'any Dispute' and defines 'Dispute' to 'have the broadest meaning possible . . . includ[ing] contract claims, and claims based on [sic] tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.' Accordingly, the plain language of the arbitration clause clearly calls for a broad scope. Third, nothing suggests that Congress intended to exempt Plaintiff's claims from arbitration."); *Rajapakse v. Credit Acceptance Corp.*, 2017 U.S. Dist. LEXIS 135092 (E.D. Mich. July 28, 2017) ("And, just as in *West*, [*Ivory*], and *Garcia*, the scope of the arbitration agreement here is quite broad. The

---

[2] All unpublished case law will be attached in alphabetical order (by plaintiff's last name) as Exhibit 2.

arbitration clause provides for arbitration of 'any Dispute,' and provides that ''Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories.' The language of the arbitration agreement plainly encompasses a broad swathe of potential claims in its scope"); *Garcia v. Weltman, Weinberg & Reis Co*, *et al*. 2014 U.S. Dist. LEXIS 59825 (E.D. Mich. Apr. 30, 2014) ("the Court easily concludes that the parties have a valid arbitration agreement" and that "given the breadth of the Arbitration Clause, [Plaintiff] cannot" raise any argument as to why her claims (violation of federal and state consumer-protection statutes) would be unsuitable for arbitration); *Ivory v. Champs Auto Sales, Inc.*, 2014 U.S. Dist. LEXIS 167765 (E.D. Mich. Dec. 4, 2014) (". . . EFTA claim is [not] immune from the mandatory arbitration provision in their contract with CAC"); *Anderson v. Credit Acceptance Corp.*, 2015 U.S. Dist. LEXIS 70149 (W.D. Mich. June 1, 2015) ("Because there was a valid Arbitration Clause, and the dispute at issue falls within the substantive scope of that agreement, Plaintiff must submit her claims to arbitration"); *Copeland v. Katz*, 2005 U.S. Dist. LEXIS 31042 (E.D. Mich. Nov. 28, 2005) (holding that a substantially-similar Credit Acceptance arbitration clause was not unconscionable and enforceable).

Courts sitting outside of Michigan have also had occasion to analyze Credit Acceptance's arbitration clause. For example, the United States District Court for the Northern District of Ohio stated:

> When faced with a broad arbitration agreement, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators. *Credit Acceptance Corp v. Davisson*, 644 F. Supp. 2d 948, 959 (N.D. Ohio 2009) (quoting S*olvay Pharms. v. Duramed Pharms, Inc.*, 442 F.3d 471, 482 n.10 (6th Cir. 2006)). (Original emphasis.)

11.

The *Davisson* court noted that, because the Credit Acceptance Arbitration Clause "provides for arbitration of any dispute, it is broad in scope." *Id*. The court, therefore, held that Davisson's claims for violation of consumer statutes and for conversion and trespass to chattel "clearly fall within the Contract's definition of 'Dispute,'" and thus "all of the parties' claims are arbitrable." *Id*. at 960. Also see, *Smith v. Credit Acceptance Corp*., 2017 U.S. Dist. LEXIS 3910 *7 (M.D. Pa. Jan. 2017) ("Here the Court has no trouble concluding that a valid Arbitration Clause exists and the dispute falls within the scope of the agreement."); *Lee v. Credit Acceptance Corp*., 2015 U.S. Dist. LEXIS 153035 (W.D. Wis. Nov. 12, 2015) (". . .this is a straightforward case. First. . .there is a written Arbitration Clause. Second. . .the parties' dispute falls within the scope of their Arbitration Clause. Third, Lee has refused to arbitrate. These are the three prerequisites for compelling arbitration, and they are present in this case").

It is against the backdrop of this strong federal policy in favor of arbitration, including the near uniform enforcement of Credit Acceptance's Arbitration Clause, that the Court must evaluate the merits of Credit Acceptance's pending motion. Here, the Arbitration Clause is unambiguous, enforceable, and mandatory. As such, Credit Acceptance's motion should be granted.

**3.2.    The prerequisites established by the FAA for the mandatory enforcement of arbitration agreements are satisfied in the present lawsuit.**

The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2.

In addition, when a lawsuit involves "any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Each of these requirements is satisfied in this case.

First, it is beyond dispute that the Arbitration Clause here is in writing. (Cortte Dec., Ex. A). The FAA's first prerequisite for enforcement of an arbitration agreement is satisfied on this point.

Second, the transaction in this case meets the commerce requirement. The Arbitration Clause specifically provides that: "It is expressly agreed that this Contract evidences a transaction in interstate commerce." *Id*. Courts consider such express language evidence of the satisfaction of the interstate commerce requirement. *See, e.g., Volt Info. Sciences, Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989) (courts must "rigorously enforce [arbitration] agreements according to their terms"). Because "[a]rbitration under the [FAA] is a matter of consent, not coercion," and because "parties are generally free to structure their arbitration agreements as they see fit," courts must "give effect to the contractual rights and expectations of the parties." *Id.* It is also recognized that the FAA applies to transactions involving the sale of automobiles. *See, e.g.*, *Arrasola v. MGP Motor Holdings, LLC*, 172 So. 3d 508, 514 (Fla. Dist. Ct. App. 2015) (enforcing arbitration provision in sale of automobile); *see also United States v. Evans*, 272 F.3d 1069, 1080 (8th Cir. 2001) (same). As such, the Court should easily conclude that the subject transaction affects interstate commerce. The second prerequisite for enforcement of the parties' arbitration agreement is satisfied in the present action.

13.

Third, the final inquiry under Section 2 of the FAA is whether the claims asserted fall within the scope of the arbitration agreement. As an initial matter, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp.*, 460 U.S. at 24-25. The Supreme Court dictates that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the Arbitration Clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986). The presumption in favor of arbitrability "is particularly applicable where the [arbitration] clause is. . . broad," *id*., as it is in this case. Ultimately, this is a question of "arbitrability."

The arbitrability of a dispute "must be addressed with a healthy regard for the federal policy favoring arbitration . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Further, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration agreement itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc.,* 489 U.S. at 476. In fact, the presumption of arbitrability, created by the mere existence of an arbitration agreement, can only be overcome if "it may be said with positive assurance that the arbitration agreement is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)).

14.

Here, Plaintiff's claims against Credit Acceptance, although somewhat unclear, unquestionably fall within the ambit of the Arbitration Clause. Again, it provides, in pertinent part, that, "A 'Dispute' is any controversy or claim between You and Us arising out of or in any way related to this Contract . . . [and] the collection of amounts due under this Contract. . .'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based in tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." (Cortte Dec., Ex. A). Plaintiff's claims are all "Disputes" falling within the ambit of the Arbitration Clause because the claims are "arising out of" and "in any way related" to the Contract and collection of amounts due under the Contract. (Dkt. #1.) That is, without the Contract, Plaintiff would have no connection to Credit Acceptance whatsoever, and thus, no opportunity to bring the instant lawsuit with the current fact pattern as alleged by Plaintiff. The third and final prerequisite for mandatory enforcement of the parties' arbitration agreement is satisfied.

Accordingly, the Court should compel binding arbitration because the FAA prerequisites are established under the facts, and Plaintiff cannot maintain any challenge to the Arbitration Clause. Indeed, it is the plaintiff who bears the burden of any challenge to the validity of the arbitration agreement. *See, e.g.*, *Howard v. Rent-A-Center, Inc*., 2010 U.S. Dist. LEXIS 76342 (E.D. Tenn. July 28, 2010) ("In addition, to show the validity of the agreement is in question, the party opposing arbitration must typically show a genuine issue of material fact as to agreement's validity"). Courts may only invalidate arbitration agreements based upon generally applicable contract defenses. *See* 9 U.S.C. § 2; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). A court should uphold and enforce an arbitration agreement even if an arbitrator may later hold the remainder of the contract invalid. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

440, 448 (2006) ("It is true . . . that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void").

### 3.3. This action should be dismissed with prejudice, or in the alternative, stayed pending the final outcome of arbitration.

Plaintiff's claims are subject to arbitration, and Credit Acceptance requests that this action be dismissed with prejudice. Several circuit courts have agreed with this approach, *e.g.*, in *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000), the court ruled that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." In *Green*, the Sixth Circuit acknowledged that it is permissible to dismiss arbitral claims holding a dismissal has no effect on a party's ability to subsequently challenge an arbitration ruling on grounds set forth by the FAA. *Green*, 200 F.3d at 973. The instant matter should be dismissed. In addition, this Court has also reached the same conclusion, "Finally, because all of Plaintiff's claims are subject to arbitration, the Court sees no basis to stay this proceeding rather than dismiss without prejudice. See *Glazer*, 394 F.3d at 451." *Firdous*, 2017 U.S. Dist. LEXIS 218911, at *7. Here, the Court should dismiss this matter so that the parties may pursue their respective claims and counterclaims in binding arbitration.

### 4. CONCLUSION

For the foregoing reasons, Credit Acceptance respectfully requests that the Court grant its motion and compel the parties to arbitrate their dispute, with the duty on Plaintiff to initiate the arbitration process. Furthermore, if the Court grants the motion, then Credit Acceptance also requests the Court to dismiss this action with prejudice before any discovery takes place, or in the alternative, immediately stay all proceedings in this action pending the final outcome of arbitration.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KING AND ASSOC., PLLC |
|  | By: */s/ Stephen W. King*<br>Stephen W. King (P56456)<br>Attorneys for Credit Acceptance Corp.<br>355 S. Old Woodward, Suite 100<br>Birmingham, MI 48009<br>(248) 792-2398 |
| Dated: September 14, 2021 | sking@kingandmurray.com |

## **CERTIFICATE OF SERVICE**

      Stephen W. King hereby certifies that on September 14, 2021, Defendant Credit Acceptance Corporation's Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay All Proceedings was filed with the Clerk of the Court using the CM/ECF system, which will provide notice to all counsel of record.

                                                                                               */s/Stephen W. King*